### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES K. BRELAND, JR., <u>et</u>** <br> **<u>al.</u>,** | ) <br> ) <br> ) |
|       Plaintiffs, | ) <br> ) |
| vs. | )   **CIVIL ACTION NO. 14-158-CG-C** <br> ) |
| **LEVADA EF FIVE, LLC,** | ) <br> ) |
|       Defendant. | ) |

### <u>ORDER</u>

This matter is before the Court on Defendant's Motion to Dismiss or Transfer Venue (Doc. 31) and Plaintiffs' Motion for Reference to the United States Bankruptcy Court for the Southern District of Alabama (Doc. 35).   The motions have been fully briefed and are ripe for consideration.  For the reasons set forth herein, both motions are due to be denied.

**Background**

This lawsuit arises out of a contract between Plaintiff Osprey Utah, LLC ("Osprey") and Defendant Levada EF Five, LLC ("Levada"), which is pursuant to Plaintiff Charles K. Breland, Jr.'s ("Breland") Chapter 11 reorganization bankruptcy plan. (Doc. 1 at 3, ¶ 16). Breland is the sole member of Osprey, Water Canyon Holdings, LLC ("Water Canyon"), Range Creek Holdings, LLC, ("Range Creek"), and Utah Reverse Exchange, LLC ("Utah Reverse").  In 2009, Breland filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Alabama ("the

Bankruptcy Court"). As required, Breland filed a Chapter 11 bankruptcy plan with the Bankruptcy Court. As a means of implementing the Chapter 11 plan, Breland agreed to sell his interests in Water Canyon, Range Creek, Utah Reverse, and Patomos Energy, LLC to Levada. The agreement also includes satisfaction of a mortgage on property that was owned by Breland, to wit 20,676 acres of land located in Carbon and Emery Counties, Utah ("the Utah property"). On December 10, 2010, the Bankruptcy Court entered an order confirming the plan.

Levada was formed for the sole purpose of purchasing property from Breland during his bankruptcy proceedings, and it is incorporated in Delaware and maintains its principle place of business in New York. Levada's managing partner is Argos Utah I, LLC ("Argos Utah"), which is also incorporated in Delaware and maintains its principle place of business in New York. Adrian Zajac is the sole member of Argos Utah. On behalf of Levada, Zajac traveled to Mobile, AL many times to negotiate the agreement to purchase the Utah property and to participate in Breland's bankruptcy proceedings. After the agreement was reached, the additional terms of the contract were negotiated by the parties and their attorneys in the states of Utah and New York.

After confirmation, on January 27, 2011, Levada and Osprey entered in an agreement whereby Plaintiffs agreed to sell Levada the Utah property subject to certain terms and conditions. The terms of the contract include Plaintiffs' conveyance of the Utah property and mineral rights to the property for and in consideration of Levada's agreement to pay settlement costs of up to $1,750,000 in a

collateral civil action.  The terms further required that if Levada was able to settle the collateral action for less than $2,900,000 then Levada remained obligated to reimburse Plaintiffs for $90,000 of attorney's fees that they incurred in the collateral action.  Under the terms of the contract, Levada also agreed to pay the property taxes on the Utah Property for the years of 2008 – 2011 and any future taxes.  The contract also includes a forum selection clause that reads:

> (a) This agreement shall be governed by, and construed and interpreted in all respects in accordance with, the laws of the State of Utah, without giving effect to the principles and conflicts of laws thereof.  Each of the parties hereto irrevocably submit to the jurisdiction and venue of any state or federal court sitting in Salt Lake City, Utah over any action or proceeding arising out of or relating to this Agreement or its interpretation.  The provisions of this Agreement may be enforced by equitable remedies, including, without limitation, specific performance, except as otherwise limited in this Agreement.

(Doc. 1-3 at 15 – 16).  On April 18, 2011, Mr. Breland filed a motion to modify the plan and confirmation order to provide for an amended and modified agreement that represents the agreement between Plaintiffs and Levada.  The Bankruptcy Court approved the modification.

On April 2, 2014, Plaintiff filed this action in this Court seeking compensation from Levada for breach of contract and attorneys fees incurred in litigating this action.  In the complaint, Plaintiffs contend that Levada settled the collateral action for less than $2,900,000, but failed to remit the $90,000 payment for Plaintiffs' attorney's fees.  Additionally, Plaintiffs contend that Levada failed to pay the property taxes on the Utah Property for 2011 – 2013, and Mr. Breland was forced to pay the taxes in order to avoid any further delinquencies.

3

On September 23, 2014, Levada filed a Motion to Dismiss or Transfer Venue to the United States District Court for the District of Utah.  In support thereof, Levada contends that venue in this district is improper under 28 U.S.C. § 1391(b). Levada, which is incorporated in Delaware and maintains its principle place of business in New York, contends that it does not reside in this district, and therefore, is not subject to venue pursuant to 28 U.S.C. § 1391(b)(1).  Further, Levada contends that venue is not proper in this district because a substantial part of the event or omissions giving rise to this action did not occur in this district and the subject property is not located in this district; thus, venue is improper under 28 U.S.C. § 1391(b)(2).  Finally, Levada contends that because there are at least three proper districts where the action could have been brought, Delaware, New York, and Utah, then venue is improper under 28 U.S.C. § 1391(b)(3).  As such, Levada moves for dismissal of this case or transfer to the District Court in Utah pursuant to 28 U.S.C. § 1406(a).  Additionally, Levada challenges its contacts with this district, and argues that this Court lacks personal jurisdiction over it.  Alternatively, Levada moves for transfer of this case pursuant to 28 U.S.C. § 1404(a) primarily based on the forum selection clause and the parties irrevocable consent to jurisdiction and venue in Utah.

On October 7, 2014, Plaintiffs filed a response to Levada's motion and a Motion For Reference to the United States Bankruptcy Court in this district. (Docs. 34, 35).  In their response, Plaintiffs argue that due to their petition for reference to the Bankruptcy Court, Levada's motion is moot. Plaintiffs contend that the instant

suit is "related to" Mr. Breland's Chapter 11 bankruptcy plan and should be transferred pursuant to 28 U.S.C. § 157(a). Alternatively, Plaintiffs contend that Levada's motion to transfer should be denied, as venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the agreement was negotiated in this district and submitted to and approved by the Bankruptcy Court in this district. Consequently, Plaintiffs contend that Alabama has specific jurisdiction over Levada regarding the disputed contract.  Finally, Plaintiffs contend that because venue is proper in this district the case should not be dismissed under 28 U.S.C. § 1406; rather, Levada's request to transfer to Utah should be evaluated based on a forum non convenience analysis under 28 U.S.C. § 1404 because the parties' forum selection clause is permissive and not binding.  Plaintiffs argue that such analysis favors maintaining venue in this district. Levada claims that its lack of contacts with this state raises the threshold issue of whether this Court has jurisdiction over it.  "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims, as a defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." Range Creek Holdings, LLC v. Cypress Capital II, LLC, 2009 U.S. Dist. LEXIS 23951, *8-9, 2009 WL 857533 (S.D. Ala. March 25, 2009) (citing Republic of Pan. v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997)).  The Court thus addresses Levada's jurisdictional challenge first.

1.  **Personal Jurisdiction**

The plaintiff "has the burden of establishing a prima facie case of personal jurisdiction." Id. (citing Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006)).  If the plaintiff has done so, the burden shifts to the defendant to make a prima facie evidentiary showing, by affidavits or otherwise, that personal jurisdiction is not present. Future Technology Today, Inc. v. OSF Healthcare Systems, 218 F.3d 1247, 1249 (11th Cir. 2000).  If the defendant sustains that responsibility, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint. Id. However, the allegations in the complaint still must be taken as true to the extent they are uncontroverted by the defendant's affidavits. S & Davis Intern., Inc. v. The Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000).  And if the parties present conflicting evidence, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing will be sufficient to survive a motion to dismiss notwithstanding the contrary presentation by the moving party. Id.

A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state." Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing Prejean v. Sonatrach, Inc., 652 F.2d 1260 (5th Cir. 1981)).  Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution.

Ala. R. Civ. P. 4.2(a)(2)(I); Martin v. Robbins, 628 So. 2d 614, 617 (Ala. 1993); Horn

v. Effort Shipping Co., Ltd., 777 F. Supp. 927, 929 (S.D. Ala. 1991).  Due process

authorizes the exercise of personal jurisdiction over a nonresident defendant when

"(1) the nonresident defendant has purposefully established minimum contacts with

the forum;" and "(2) the exercise of jurisdiction will not offend traditional notions of

fair play and substantial justice." S.E.C. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir.

1997) (citation omitted); International Shoe Co. v. Washington, 326 U.S. 310, 316,

90 L. Ed. 95, 66 S. Ct. 154 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 85

L. Ed. 278, 61 S. Ct. 339, (1940)) (The Due Process Clause requires that a non-

resident defendant has "certain minimum contacts with [the forum state] such that

the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'"); see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass,

P.A., 421 F.3d 1162, 1166 (11th Cir. 2005).  However, the nature and quality of the

contacts required by the Due Process Clause vary depending upon whether the

plaintiff asserts general or specific personal jurisdiction. See Consolidated

Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).

General personal jurisdiction arises from a defendant's contacts with the

forum that are unrelated to the cause of action being litigated. Id., 216 F.3d at 1292.

In order for a court to possess general jurisdiction over a defendant, the defendant

must have "continuous and systematic" business contacts with the forum state. Id.;

Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th

Cir. 1986). See also Perkins v. Benguet Mining Co., 342 U.S. 437, 96 L. Ed. 485, 72

7

S. Ct. 413 (1952).  Thus, the due process requirements for general personal

jurisdiction are more stringent than for specific personal jurisdiction. <u>Consolidated</u>

<u>Development Corp.</u>, 216 F.3d at 1292.

 "Specific jurisdiction[,] [however,] arises out of a party's activities in the

forum that are related to the cause of action alleged in the complaint." <u>Id.</u>, 216 F.3d

at 219. (citing <u>Madara v. Hall</u>, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990), citing

<u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 nn. 8 & 9, 104

S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).  It is well established that the requisite

minimum contacts will exist to support the exercise of specific jurisdiction "only

where the defendant 'purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its

laws.'" <u>Id.</u>, (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S.

Ct. 1228 (1958)). "This 'purposeful availment' requirement ensures that a defendant

will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts, <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. [770, 774 (1984)];

<u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 299, 62 L. Ed. 2d 490, 100

S. Ct. 559 (1980), or of the 'unilateral activity of another party or a third person,'

<u>Helicopteros Nacionales</u>, 466 U.S. [at 417]." <u>Burger King Corp. v. Rudzewicz</u>, 471

U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).  Thus, "the defendant's

[own] conduct and connection with the forum State [must be] such that he should

reasonably anticipate being haled into court there." <u>World-Wide Volkswagen</u>, 444

U.S. at 297.  Nevertheless, merely a single act by a non-resident defendant directed

to a forum state can be sufficient to confer specific personal jurisdiction if the act gave rise to the cause of action at issue. See Burger King, 471 U.S. at 476 n.18.

In the instant case, the parties agree that Levada is not subject to general jurisdiction in Alabama; however, Plaintiffs assert that Levada's activities in Alabama related to Breland's bankruptcy and the negotiations for Levada's attainment of rights to the Utah property at issue subject Levada to specific jurisdiction in Alabama regarding the enforcement of the disputed contract. (Doc. 34 at 6). Levada counters that it does not have sufficient minimum contacts with Alabama to satisfy the exercise of specific jurisdiction. (Doc. 31 at 5, n. 5). Levada states that it has no officers or employees in Alabama, and it does not conduct business in Alabama. (Id.). Levada notes that it "was formed solely to enter in a potential contract with Breland, in the course of his Chapter 11 case, to purchase assets located in Mexico and Utah." (Id.). Levada admits that "Adrian Zajac, the managing member of Argos Investment Partner, LLC…did come to Alabama in 2010 on several occasions to attend bankruptcy hearings and discuss potential purchases with Breland." (Id.). Levada further explains that although the agreement was formed in Alabama the terms of the disputed contract were negotiated in New York and Utah for the purchase of property that is located in Utah. (Id.). Thus, Levada argues that the limited contacts that it developed with Alabama, through Zajac, are not such that it anticipated being haled into court in Alabama. (Id.). The Court disagrees.

To determine whether there are sufficient minimum contacts with Alabama and whether Levada has purposefully availed itself of the privilege of acting or causing a consequence in Alabama, the court evaluates the prior negotiations and contemplated future consequences, along with the contract terms and the parties' actual course of dealing. Burger King, 471 U.S. at 479. It is the quality of contacts, not the quantity of contacts, that is important. Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001).

Upon evaluation, the Court finds that Levada has sufficient minimum contacts with Alabama to satisfy due process and establish personal jurisdiction in the Southern District of Alabama. First, as Levada admits, Levada "was formed solely to enter in a potential contract with Breland[] in the course of his Chapter 11 case", which remains pending in the Bankruptcy Count in Alabama. (Doc. 31 at 5, n. 5). When negotiating the disputed contract, Levada was aware that the final contract concerning the Utah property would become a component of Breland's Chapter 11 bankruptcy reorganization plan, which would be administered by the Bankruptcy Court in Alabama. In fact, in the terms of the disputed contract, Levada welcomed the jurisdiction of the Bankruptcy Court. The contract provides, in pertinent part, that "Levada [ ] request[s] that Breland seek bankruptcy court approval of this Agreement, and Breland agrees to file with the Bankruptcy court [the] motions attached…seeking approval of this Agreement…within two (2) business days,…[and] to thereafter pursue such approval within all commercially reasonable diligence, and to cooperate and coordinate with Levada in accordance

10

therewith". (Doc. 1-3 at 16).  These provisions confirm that Levada purposely and voluntarily submitted to the jurisdiction of the Bankruptcy Court in Alabama.

Furthermore, through Zajac, Levada willingly and actively engaged in business in Alabama.  Indeed, Zajac admits that he "traveled many times to Mobile, Alabama to participate in Bankruptcy Court proceedings and negotiations regarding these potential purchases, and their possible inclusion as part of a plan of reorganization relating to the Breland bankruptcy." (Doc. 31-1 at 3, ¶ 5).  Thus, Levada willingly participated in Breland's bankruptcy proceedings, knowingly engaged in negotiations for the sale of the Utah property, and ultimately, reached an agreement all while conducting business in Alabama.  While Levada now argues that both parties subsequently retained counsel who was located in Utah to negotiate the final terms and draft the final agreement their having done so does not undermine Levada's contacts with Alabama regarding the creation, approval, and implementation of the disputed contract.

Therefore, in accordance with the intention of its formation, Levada knowingly welcomed the jurisdiction of the Bankruptcy Court of this district, as Levada purposely participated in bankruptcy proceedings in this district, zealously engaged in negotiations to purchase the property at issue in this district, and ultimately, reached an agreement in this district.  Subsequently, Levada entered into a contract with a citizen of this district with the foreknowledge that the contract would be approved by and administered under the jurisdiction of the Bankruptcy Court in this district.  Under these circumstances, the Court finds that

Levada "purposefully avail[ed] itself of the privilege of conducting activities within [Alabama] [and],…invoke[ed] the benefits and protections of its laws". See Hanson, 357 U.S. at 253.  Therefore, Levada is subject to personal jurisdiction in Alabama regarding the disputed contract.

## 2.  Venue

### a.  Whether Venue is Proper in This District

Levada submits that venue is improperly laid in this district as it is not a resident of this district and neither a substantial portion of the disputed acts or omissions occurred here nor is the property located in this district; thus, Levada requests that this case be dismissed or transferred to the District Court in Utah pursuant to 28 U.S.C. § 1406(a). (Doc. 31 at 3-4).  Plaintiffs respond that venue is properly laid in this district pursuant to 13 U.S.C. § 1391(b)(2) as "a substantial part of the events or omissions giving rise to the claim occurred" in this district. (Doc. 34 at 5).  The Court first considers whether venue is properly laid in this district in order to determine which transfer of venue analysis is applicable to this case. See Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1368 n.1 (11th Cir. 2003):

> Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is implicit in the Alabama court's citation to section 1404(a) that, in the court's view, venue was properly laid in Alabama. Otherwise, the court would have transferred the case pursuant to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The general federal venue statute provides that "[a] civil action may be brought in[] (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3).  Where improper venue is alleged, "the plaintiff must present only a prima facie showing of venue" and, in so doing, "[t]he facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by [the] defendant['s] affidavit[]." Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988) (citations omitted).

The Court finds that Plaintiffs have presented a prima facie showing of venue under § 1391(b)(2), which lays venue in a district in which  "a substantial part of the events or omissions giving rise to the claim" occurred. Cf. Jenkins Brick Co., supra, 321 F.3d at 1371 ("The new language [of the general venue statute] thus contemplates some cases in which venue will be proper in two or more districts."). As noted by the court in Jenkins Brick Co., "[o]nly the events that directly give rise to a claim are relevant.  And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." Id. The court in Jenkins Brick Co. relied upon the Eighth Circuit's opinion in Woodke v.

Dahm, 70 F.3d 983 (1995), which "noted that the statute protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" Id., at 1371-1372 (quoting Woodke v. Dahm, 70 F.3d at 985).

Here, a substantial portion of the events giving rise to Plaintiffs' claims occurred in the Southern District of Alabama.  By Levada's own admission, it was created solely to purchase property from Breland in the course of Breland's bankruptcy, which is currently under administration of the Bankruptcy Court in this district.  Levada, through Zajac, traveled to this district "on several occasions" (Doc. 31 at 5, n.5) to negotiate the purchase of the subject of Plaintiff's claim, the Utah property.  Indeed, Plaintiffs contend and Levada confirms that the parties reached an agreement for the sale of the subject Utah property in this district.  Furthermore, after the disputed contract was executed Breland submitted the contract to the Bankruptcy Court for approval in this district, which was in direct compliance with Levada's contractual requirement that Breland "pursue such approval within all commercially reasonable diligence, and…cooperate and coordinate with Levada in accordance therewith". (Doc. 1-3 at 16).

 In light of the foregoing, the Court finds that because a substantial portion of the events giving rise to the disputed contract, including the implementation thereof, that is the is subject of Plaintiffs claims against Levada occurred in the Southern District of Alabama, Plaintiffs have made a prima facie showing that venue is proper in this district.  Accordingly, to the extent that Levada requests

that this case be dismissed or transferred for lack of proper venue pursuant to 28 U.S.C § 1406(a), this motion is due to be denied.  Because venue of this action is properly laid in the Southern District of Alabama, the undersigned considers Levada's alternative request that venue of this action be transferred to Utah pursuant to 28 U.S.C. § 1404(a).

### b.  Whether This Case Should be Transferred to Utah

Alternatively, Levada requests that this case be transferred to the District Court of Utah pursuant to 28 U.S.C. § 1404(a), "primarily based on the forum selection clause agreed to by the parties", which provides in pertinent part that "the parties hereto irrevocably submit to the jurisdiction and venue of any state or federal court sitting in Salt Lake City, Utah over any action or proceeding arising out of or relating to this Agreement". (Doc. 31 at 6).  Levada contends that such language represents a mandatory forum selection clause, or alternatively an express waiver of the right to object to venue in Utah, which supports transfer to Utah based on this Courts holding in Range Creek Holdings, LLC v. Cypress Capital II, LLC, 2009 U.S. Dist. LEXIS 23951, 2009 WL 857533 (S.D. Ala. March 25, 2009).  Levada further adds that the additional § 1404 factors weigh in favor of transfer to Utah because the subject property is located in Utah, "all performances due under the agreement [were] to be rendered" in Utah, Utah law governs the disputed contract, and the majority of the witnesses, except Levada, Zajac, Breland, and perhaps Breland's representatives, are all located in Utah. (Id., at 6-7).  Thus,

Levada contends that the balance of justice and convenience favors transfer to Utah. (Id.).

Plaintiffs argue that the forum selection clause is permissive, rather than mandatory, noting that the language does not state "that the courts of Utah are the sole or exclusive venue where disputes involving the agreement may be adjudicated." (Doc. 34 at 8) (emphasis in original).  Plaintiffs further contend that the clause represents the parties agreement "to waive any jurisdictional defenses that they may have to litigating disputes arising from the agreement" in Utah. (Id.).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." (emphasis supplied).  Relevant § 1404 factors include: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citations omitted); see also Gould v. National Life Ins. Co., 990 F.Supp. 1354, 1357-1358 (M.D. Ala. 1998) (when deciding whether to transfer venue, "courts generally rely on a number of factors including: (1) the plaintiff's

choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system."); see Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (decided before enactment of § 1404 but noting numerous relevant factors and observing that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

Levada has not satisfied the burden of establishing that this case represents one of those rare situations warranting the disturbance of Plaintiffs' choice of forum. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ("The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. . . . Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient."). The convenience of the parties weighs slightly in Plaintiffs' favor since it is certainly more convenient for the Plaintiffs, whose principal place of business is in Alabama and whose representatives are located in Louisiana, to pursue this lawsuit in this Court.  Notably, although Levada prefers to defend this action in Utah, its agent, Zajac, is a resident of New York, which is geographically distant from both Utah and Alabama.  While the Court is aware that geography is not the sole concern of a party's convenience Levada's argument that Utah is a more convenient forum for

most of the additional witnesses lacks evidentiary support, as Levada fails to identify the potential witnesses or the nature and importance of their testimony. Cf. American Standard, Inc. v. Bendix Corp., 487 F.Supp. 254, 262 (W.D.Mo. 1980) ("[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied.").   Additionally, there is no indication from Levada that it has witnesses that will be unavailable for trial in this Court, if a trial is, in fact, necessary.

Furthermore, there is nothing to show that the documents involved in this case are anything other than readily-obtainable in both venues.  Given the ability to move documents with relative ease in today's world, the location of documents (and other sources of proof) factor certainly does not weigh in favor of transfer to Utah, particularly since Breland maintains most of the pertinent documents in Alabama. Thus, this factor does not weigh in either party's favor.  Also, the parties make no arguments regarding their relative financial abilities to bear the cost of travel; accordingly, the Court finds that this factor does not weigh in either party's favor.

Finally, nothing been presented to suggest that the trial efficiency and interest of justice system factor weighs in favor of transfer, particularly since this Court stands ready to give both parties a full and fair hearing in an expeditious manner. Cf. P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 808 (11th Cir. 2003) ("Although docket congestion, if proven, may be an appropriate

consideration in a § 1404 motion to transfer, case law does not suggest that docket congestion is, by itself, a dispositive factor.").

Levada's central claim under this factor is the parties' forum selection clause; however, this Court finds that the disputed clause is permissive, rather than mandatory, as the clause does not state that Utah is the state of exclusive venue, but rather dictates that the parties consent to jurisdiction in Utah and waive the right to object if a suit is brought in Utah.  Additionally, Levada mentions that the parties' choice of law clause requiring that Utah law govern the dispute favors transfer to Utah; however, this Court is fully capable to interpret and apply Utah law. See Keane by & Through Keane v. Lederle Lab., 1994 U.S. Dist. LEXIS 4305, 8 (S.D. Ala. Mar. 16, 1994) (applying Utah product liability law).

All a transfer would do in this case is shift any inconvenience from Levada to the Plaintiffs and therefore, this Court must necessarily favor the Plaintiffs' choice of forum by denying Levada's motion. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) ("'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'"); see Susie's Structures, Inc. v. Ziegler, 2010 U.S. Dist. LEXIS 59168, 2010 WL 2136513, *6 (M.D. Fla. May 27, 2010) ("[G]reat deference is afforded the plaintiff's choice of forum when that forum is in the district in which the plaintiff resides.").

**3.  Conclusion**

For the reasons set forth above, it is hereby ORDERED that Plaintiffs' Motion for Reference to the United States Bankruptcy Court for the Southern

District of Alabama (Doc. 35) and Defendant's Motion to Dismiss or Transfer Venue

(Doc. 31) are both **DENIED**.

      **DONE** and **ORDERED** this 16th day of January, 2015.

                            /s/  Callie V. S. Granade
                            UNITED STATES DISTRICT JUDGE