IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES K. BRELAND, JR., <u>et</u>** | ) | |
| **<u>al.</u>,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 14-158-CG-C** |
| | ) | |
| **LEVADA EF FIVE, LLC**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## <u>ORDER</u>

This matter is before the Court on the motion of Plaintiffs[1] for a
renewed judgment as a matter of law on Plaintiffs' breach of contract claims
(Doc. 178), opposition thereto by Defendant Levada EF Five, LLC ("Levada")
(Doc. 181), Plaintiffs' Renewed Motion for Judgment as a Matter of Law on
Levada's Counterclaim for Breach of Contract (Doc. 179), Levada's opposition
thereto (Doc. 182), Plaintiffs' Motion for a New Trail or, Alternatively, Motion
for Remittitur (Doc. 180), Levada's response in opposition thereto (Doc. 183),
Levada's Motion for Entry of Judgment With Interest, Attorneys' Fees, and
Litigation Expenses (Doc. 175), and Plaintiffs' objection thereto (Doc. 177).
For the reasons explained below, the Court holds that Plaintiffs' Motions for

---

[1] Plaintiff Charles K. Breland, Jr.; Osprey Utah, LLC ("Osprey"); Water
Canyon Holdings, LLC ("Water Canyon"); Range Creek Holdings, LLC
("Range Creek"); and Utah Reserve Exchange, LLC ("Utah Reserve") are
collectively referred to as "Plaintiffs".

Judgment as a Matter of Law and their Motion for a New Trial or, Alternatively, Motion for Remittitur is due to be denied. As to Levada's Motion for Entry of Judgment with Interest, Attorneys' Fees, and Litigation Expenses, the Court holds for the reasons set forth below that it is due to be granted, in part, withheld, in part, and denied, in part.

## BACKGROUND

This case arises from an Amended and Restated Agreement (the "Agreement") between Mr. Breland and Levada, which is a product of Mr. Breland's bankruptcy. The Agreement facilitated the transfer of Plaintiffs' interest in approximately 20,676 acres of land located in Carbon County, Utah (the "Utah property") to Levada pursuant to the Agreement's terms and conditions. Plaintiffs filed a three-count breach of contract suit against Levada, and Levada filed a one-count breach of contract counterclaim against Plaintiffs. The case was tried before a jury in this Court on February 1, 2, and 3, 2016.

Of the three counts originally filed, Plaintiffs only pursued two at trial: (1) Levada failed to pay property taxes for the Utah property in violation of Section 15 of the Agreement and (2) Levada failed to satisfy Section 8 of the Agreement, which requires Levada, subject to force majeure, to meet certain development obligations for the Utah property. Levada's counterclaim sought damages under Section 14 of the Agreement for Mr. Breland's failure to transfer three Questar Facility Agreements to Levada within 120 days of

the Agreement's closing date.  The jury returned a verdict in favor of Levada

on Plaintiffs' two breach of contract claims and on Levada's counterclaim for

breach of contract.  (Doc. 173-1).  On Levada's counterclaim, the jury awarded

Levada "$1,500,000.00 – 79,328.98 Utah taxes paid," which equals

$1,420,671.02 in total damages.  Id. at 2.

## DISCUSSION

### A. Renewed Judgment as a Matter of Law

Judgment as a matter of law under Rule 50(a) of the Federal Rules of

Civil Procedure is appropriate where "there is no legally sufficient

evidentiary basis for a reasonable jury to find for the non-moving party."

Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231,

1251 (11th Cir. 2007).  If the court denies a Rule 50(a) motion, the movant

may file a "renewed motion" after trial.  Fed. R. Civ. P. 50(b).

The standard for deciding a Rule 50(b) motion is the same as a Rule

50(a) motion.  McGinnis v. Am. Home Mortg. Servicing, Inc., – F.3d –, 2016

WL 1105394, at *8 (11th Cir. 2016).  Thus, the proper Rule 50(b) "analysis is

squarely and narrowly focused on the sufficiency of the evidence."  Chaney v.

City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007).  In evaluating whether

sufficient evidence supports a jury's verdict, "'the court must evaluate all the

evidence, together with any logical inferences, in the light most favorable to

the non-moving party.'"  Id. (quoting Beckwith v. City of Daytona Beach

Shores, 58 F.3d 1554, 1560 (11th Cir. 1995)).  The Court is ever mindful of

the Eleventh Circuit's instruction that "'[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses.'"  Id. (quoting Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 715 (11th Cir. 2002)).  "A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."  Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008).

Between Plaintiffs' Renewed Motion for Judgment as a Matter of Law for their two claims and Levada's counterclaim, Plaintiffs raise three arguments.  First, Plaintiffs aver that undisputed evidence proved that Levada did not pay taxes on the Utah property in accordance with Section 15 and, therefore, breached the Agreement.  (Doc. 178, p. 3).  Specifically, Plaintiffs contend that Mr. Breland paid $79,328.98 in 2013 to cover the taxes due on the Utah property from mid-2011 through 2012.  Further, Plaintiffs maintain that Levada's representative, Adrian Zajac, admitted during his testimony to not paying the taxes from mid-2011 on while under an obligation to do so.[2]  Thus, Plaintiffs contend they are due judgment as a matter of law on their failure to pay property taxes claim.  Levada counters

---

[2] Plaintiffs also insist that Levada never had the ability to pay the property taxes for the Utah property.  (Doc. 178, p. 3).  After reviewing the relevant trial transcript, the Court finds the testimony referenced does not support Plaintiffs' proposition.  The line of questioned referenced specifically dealt with the Section 14 development obligation and not the Section 15 payment of taxes obligation.

that it produced sufficient evidence to show Plaintiffs caused or could have caused Levada's failure to pay taxes on the Utah property.

If Plaintiffs are the cause of Levada's failure to pay taxes on the Utah property, Plaintiffs cannot benefit from Levada's nonperformance.  See Tiller v. YW Housing Partners, Ltd., 5 So. 3d 623, 629 (Ala. Civ. App. 2008).[3] Testimony at trial diverges on this point.  On the one hand you have Mr. Breland testifying that he told Adrian Zajac[4] the taxes were due but not sure if he ever told Mr. Zajac he paid the taxes.  (Doc. 184-1, p. 3, ll. 2–4).  On the other, Mr. Zajac testified that "there was some confusion in 2011 and '12 as to getting all the proper taxes, all the proper tax notices." (Doc. 184-2, p. 2, ll. 14–18).  Upon finding out that Mr. Breland paid the taxes on the Utah Property from mid-2011 through 2012, Mr. Zajac testified that he attempted to reimburse Plaintiffs for the taxes paid but was refused.  Id. at 3, ll. 1-5. Moreover, Mr. Zajac's testimony established that, even as late as a few weeks before trial, taxes for portions of the Utah property remained assessed and notified in Plaintiffs' name.  Id. at 2, ll. 16–18.

Thus, the present issue boils down to whether Mr. Breland or Mr. Zajac is the more credible witness.  Deciding between the two is not within the Court's discretion in deciding the present Rule 50(b) motion.  See

---

[3] Although the Agreement calls for the application of Utah law, the parties stipulated (Doc. 142) and the Court ordered (Doc. 155) that Alabama law "shall be used for all substantive and remedial issues."
[4] Mr. Zajac is the managing member of Levada and Levada's representative present at trail.

McGinnis, – F.3d –, 2016 WL 1105394, at *8.  And despite Plaintiffs'
contentions otherwise, the jury's reduction of Levada's award by the taxes
Mr. Breland paid is "not germane to the legal analysis" of whether a Rule
50(b) motion should be granted.  Chaney, 483 F.3d at 1228.  As such, the
issue is "whether there was sufficient evidence … from which a reasonable
jury could find" that Levada's failure to pay taxes could be attributed to
Plaintiffs.  Id.  This question is answered affirmatively.  Therefore, the Court
**DENIES** Plaintiffs' Renewed Motion for Judgment as a Matter of Law on
their first claim against Levada: failure to pay property taxes for the Utah
property.

Second, Plaintiffs move judgment on their claim that Levada failed to
satisfy its development obligation.  (Doc. 178, p. 5).  An examination of the
record shows that Plaintiffs failed to move for judgment as a matter of law for
this claim during trial.  It is undisputed that a Rule 50(b) motion "cannot
assert grounds in the renewed motion that it did not raise in the earlier
motion."  Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 903 (11th Cir. 2004).
To allow otherwise would open counsel up to being ambushed or sandbagged
regarding the sufficiency of the evidence after it is too late to address the
potential deficiency.  Id.  Therefore, Plaintiffs' motion for judgment on their
second claim is **DENIED** because it is improperly before the Court.

Third, Plaintiffs move for judgment on Levada's counterclaim that Mr.
Breland breached the Agreement by failing to transfer the Questar Facility

Agreements within 120 days of the closing date. (Doc. 179). Plaintiffs first contend that they are due a favorable ruling because Levada failed to prove its own performance under the Agreement. Id. at 3. Turning to the trial record, the Court finds this argument shares a common bond with the argument discussed immediately above: Plaintiffs did not raise it during trial. Thus, this argument is improperly before the Court.

Plaintiffs next aver that judgment as a matter of law is due on Levada's counterclaim because Section 14 of the Agreement limits Levada's remedy to indemnification of expenses incurred in gaining alternative access to the Questar Pipeline. (Doc. 179, p. 10). Alternatively, Plaintiffs argue that, even if the Agreement allows for damages, Levada suffered no cognizable injury because the Questar Facility Agreements are of no use until Levada develops the Utah property. Id. at 12. Therefore, Plaintiffs contend that the million and a half dollars in damages Mr. Zajac testified to were "taken out of the air." Id. at 13.

Alabama law recognizes the freedom to contract and upholds "clearly manifested limitations" in a contract. Campbell v. S. Roof Deck Applicators, Inc., 406 So. 2d 910, 913 (Ala. 1981). But listing only one remedy in a contract does not necessarily equate to a clearly manifested exclusion of all other remedies. Instead, the exclusivity of a remedy is based on the "intention of the parties gathered from the whole contract viewed in light of

the surrounding facts and circumstances."  Coral Gables v. Patterson, 173 So.

4, 6 (1937).

Section (B)(1), Section 2(ii), Section 3, and Section 14 of the Agreement

directed Mr. Breland to transfer three Questar Facility Agreements to

Levada.  (Doc. 172-1, pp. 1–19).  Section 14 required the transfer to take place

"[w]ithin 120 days of the Closing Date …."  It was established at trial that

Plaintiffs did not transfer the Questar Facility Agreements to Levada.  Based

on this, Section 14 the Agreement required Plaintiffs to "indemnify Levada

against costs and expenses incurred by Levada in obtaining the acquisition or

use of alternate tap facilities [ ] with equivalent through-put capacity [ ]

required by Levada."  Id. at 14.

When the remedy in Section 14 of the Agreement is juxtaposed to the

remedy in Section 9, Levada contends that sufficient evidence exists for a

reasonable jury to find that the parties did not manifest a clear intent to limit

Levada's remedy to indemnification.  (Doc. 182, p. 9).  Section 9 states in

relevant part:

> The increase of Osprey's interests initially described in Section
> 4(a), the increase in the working interest, the increase described
> in Section 5(c), and the transfer of 55% of the surface ownership
> in the Subject Property as set forth in this Section 9 shall be
> Osprey's exclusive remedy resulting from Levada's failure to
> commence the drilling program or make the required
> expenditures.

Id. at 8 (emphasis added).  The Court finds that the inference a reasonable

jury could draw from the differing language is that the parties not only

understood what an exclusive remedy is but used particular language when they "clearly manifested" such a limitation.  See Campbell, 406 So. 2d at 913. Therefore, it was not the parties' intention to exclude all other remedies.

In response to Plaintiffs' alternative argument that Levada suffered no cognizable injury, Levada contends that evidence established that it suffered damages even though the Utah property was undeveloped.  (Doc. 182, p. 11). The Court agrees.  Transfer of the Questar Facility Agreements was to take place before Levada's development obligation expired and for good reason. According to Mr. Zajac, access to the pipeline served a critical purpose in farming agreements or reaching terms with potential developers.  (Doc. 185-1, p. 83, ll. 6–10).  In fact, Mr. Zajac testified, "Talks on several occasions have broken down because we didn't have ultimate transport."  Id. at 85, ll. 1–2.  Without the agreements, "you have no way of getting that gas to market, you just spend a million or two dollars drilling a hole."  Id. at 83, ll. 15–16.  When Plaintiffs did not transfer the Questar Facility Agreements, Mr. Zajac obtained alternative access quotes from a Questar representative totaling "about a million and a half dollars."  Id. at 108, l. 12.

Mr. Zajac's testimony about the cost of alternative access might not have been mathematically certain, but it sufficiently allowed the jury to establish the "extent of damages as a matter of just and reasonable inference."  Deng v. Scroggins, 169 So. 3d 1015, 1026 (Ala. 2014) (internal quotations and citations omitted).  This distinguishes the instant matter from

the case Plaintiffs now rely on: <u>Alabama Power Co. v. Alabama Public Service Commission</u>, 103 So. 2d 14 (Ala. 1958).  In <u>Alabama Power Co.</u>, a power company employee estimated during testimony that the property in question should not be sold for anything less than $4,000,000.00.  <u>Id.</u> at 16.  The court opined that it was impressed that the figure provided was "taken out of the air; rather than computed."  <u>Id.</u> at 17.  Mr. Zajac did not take the estimate he testified to out of the air but based it on quotes Questar provided.  The reasonable inference is that the estimate was obtained through some measure of computation.  Further, the breakdown in past negotiations shows damages resulted in spite of the property being undeveloped.  A reasonable jury could find this evidence supports the verdict and "within the pale of sane judgment."  <u>Parson v. Aaron</u>, 849 So. 2d 932, 949 (Ala. 2002) (internal quotations and citation omitted).  Thus, Plaintiffs' Renewed Judgment as a Matter of Law on Levada's Counterclaim is **DENIED**.

## B. Motion for New Trial

A losing party may also motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure "on the grounds that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair … and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'"  <u>McGinnis</u>, 2016 WL 1105394 at * 8 (quoting <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243, 251 (1940)).  It is within the court's discretion

to grant a new trial when, in its opinion, "'the verdict is against the clear weight of the evidence … or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" Id. (quoting Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)). Unlike ruling on a motion for judgment as a matter of law, a district court is free to weigh evidence when ruling on a motion for new trial. Id. Thus, the trial court should evaluate both evidence favoring the verdict and favoring the moving party. Id. But it is imperative that a reviewing judge not substitute his or her judgment for that of the jury, so "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely greater—weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotations and citation omitted). Given this, the remedy set forth in Rule 59 is "sparingly used." Goodloe v. Daphne Utilities, 2015 WL 4523974, at * 4 (S.D. Ala. July 27, 2015) (citing Johnson v. Spencer Press of Main, Inc., 364 F.3d 368, 375 (1st Cir. 2004)). Moreover, "[d]eference to the district court is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1247–48 (11th Cir. 2001) (internal quotations and citation omitted).

## 1. Proof of Levada's Performance Under the Agreement

Plaintiffs' first argument in support of a new trial is that the verdict is contrary to the law and against the clear weight of the evidence because Levada failed "to prove that it performed all of its obligations arising" under the Agreement. (Doc. 180, p. 3). This argument mirrors Plaintiffs' first ground for judgment as a matter of law discussed in Section A, *supra*. The Court finds that a new trial is improper on this basis for the same reasons Plaintiffs are not entitled to judgment as a matter of law.

### 2. Jury Verdict Consistency

Plaintiffs' second argument for a new trial is that the jury's verdict is inconsistent "because the jury's findings on Plaintiffs' breach of contract claim for property taxes cannot be reconciled with the jury's attempt to compensate Plaintiffs for paying the Utah property taxes." Id. at 6. Plaintiffs argue further that "[t]he only way they could be entitled to a reimbursement of the 'Utah taxes paid' is if they prevailed on their claim for breach of contract." Id. at 7. Levada responds that Plaintiffs waived their right to object to the verdict by not doing so before the Court dismissed the jury. (Doc. 183, p. 10).

"A verdict is inconsistent when there is no rational, non-speculative way to reconcile … two essential jury findings." Reider v. Phillip Morris USA, Inc., 793 F.3d 1254, 1259 (11th Cir. 2015) (internal quotations and citation omitted). "A district court 'must make all reasonable efforts to reconcile an inconsistent jury verdict and if there is a view of the case which

makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly.'" Id. (quoting Burger King Corp. v. Mason, 710 F.2d 1480, 1489 (11th Cir. 1983)).  In reconciling an inconsistency, a district court must determine "whether the jury's answers could reflect a logical and probable decision on the relevant issues … submitted." Id.  Any objection to a verdict's inconsistency must be raised before the jury is excused.  See Coralluzzo v. Education Management Corp., 86 F.3d 185, 186 (11th Cir. 1996) (finding that "all challenges to the inconsistency of a special verdict must be raised before the jury is excused"); Mason v. Ford Motor Co., Inc., 307 F.3d 1271, 1275–76 (11th Cir. 2002) (applying the same principle to general verdicts).  "The reason for this particular raise-it-or-lose-it rule is that if the inconsistency is raised before the jury is discharged, the jury can be sent back for further deliberations to resolve the inconsistency in its verdict," but once the jury is gone "that is not possible." Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC, 684 F.3d 1211, 1225 (11th Cir. 2012).

Upon announcement of the jury's verdict, Plaintiffs did not object to the verdicts as inconsistent, and the Court dismissed the jury.  Since the necessary objection is absent, the present argument is not properly before the Court.  But even if Plaintiffs had timely objected, rational and logical bases reconcile the verdicts.  As discussed above, sufficient evidence established that some or all of the tax notices for the mid-2011 through 2012 time frame did not reach Levada.  Further, Levada presented evidence that its attempts

to reimburse Mr. Breland for the taxes he paid were rejected.  Reducing

Levada's award by the amount Mr. Breland paid merely accomplished

Levada's desire to reimburse Mr. Breland while making Levada whole for

Plaintiffs' failure to transfer the Questar Facility Agreements.  This not the

same as the jury finding for Plaintiffs on their claim.  The jury merely

reduced the damages Plaintiffs must satisfy.  It was within the jury's

prerogative to make this determination.  See G.M. Mosley Contractors, Inc. v.

Phillips, 487 So. 2d 876, 879 (Ala. 1986) (finding the amount of damages a

question for the "trier of fact").  Additionally, the Agreement clearly states

that Levada's consideration for Plaintiffs' conveyance of the Utah property is

paying off the Cypress Capital II litigation against Plaintiffs.  (Doc. 172-1, p.

11).  Levada met this condition.  Thus, it is logical and probable Levada's

failure to pay the taxes is immaterial and not a breach.  See Abernant Fire

Dept. v. Rhodes, 21 So. 3d 739, 744 (Ala. Civ. App. 2009) ("To succeed in a

breach-of-contract action, a claimant must prove a material breach of the

contract.")  Either conclusion squares with logic and cannot be said to be the

product of confusion.  Given this, a new trial is unwarranted on the

contention that the verdicts are inconsistent.

### 3. Amount of Damages Awarded by the Jury

### i. New Trial Based on the Amount of Damages Awarded

Plaintiffs next argue that a new trial should be granted because the

jury's award was based on Mr. Zajac's vague and unsubstantiated testimony.

(Doc. 180, p. 8).  Plaintiffs also argue that a new trial is necessary because Mr. Zajac materially misrepresented the cost of obtaining alternative access to the Questar Pipeline.  (Doc. 180, p. 10).  In the sense that Plaintiffs argue that Mr. Zajac's testimony regarding damages was vague and unsubstantiated, this argument mirrors the argument Plaintiffs raise in their motion for judgment as a matter of law and does not necessitate a new trial for the same reasons.

To the extent Plaintiffs argue Mr. Zajac materially misrepresented the cost of replacement Questar Facility Agreements, Plaintiffs base this argument on (1) the original price of the agreements and (2) newly discovered evidence.  To the first basis, Plaintiffs argue that they "introduced concrete proof of the real cost of the taps themselves: $180,000.00."  (Doc. 180, p. 10).  In support of this position, Plaintiffs' refer the Court to the "Questar prepared invoice WOB09-211" but do not provide citation for this invoice.  The only mention of $180,000.00 the undersigned could locate in the record is contained in the Facility Agreements.  See (Doc. 172-2, pp. 91–93).[5]  Nonetheless, Levada argues that the original cost of the facility agreements do "not prove the cost of alternate tap facilities in 2016."  (Doc. 183, p. 6).  The Court agrees.  A number of factors could play a part in moving the value of the agreements or cost of replacements up or down, none of which are in

---

[5] Even then the Facility Agreements do not specifically spell out $180,000.00. Instead, each facility agreement states, "Questar shall invoice JAKE Oil for $60,000 cost for the tap facilities."  The three agreements total $180,000.00.

evidence.  To speculate about these factors is improper.  Therefore, Plaintiffs' argument for new trial based on the Questar Facility Agreements' original price is without merit.

Under the second point, Plaintiffs proffer unto to the Court that they "are in the process of acquiring an affidavit of an authorized representative of Questar."  (Doc. 180, p. 12).  Plaintiffs contend that the affidavit will establish that Levada "could acquire access to [Mr. Breland's] taps solely by paying the tariff cost for tap connection."  Id. at 12.  Thus, Levada could access the pipeline at the same spot and pay no "more than the tariff cost." Id.  Levada parries that the affidavit is new evidence that cannot be considered because the affidavit was not in existence at trial and would contain facts discoverable before trial.  (Doc. 183, pp. 16–17).

If a party moves for a new trial based on newly discovered evidence, the motion "must not be based on evidence or incidents of which [the movant] had knowledge prior to return of the jury verdict."  Edwards v. Hyundai Motor Mfg. Alabama, 701 F. Supp. 2d 1226, 1233 (M.D. Ala. 2010) (quoting United States v. Calderon, 127 F.3d 1314, 1351 (11th Cir. 1997)).  Even though the newly discovered evidence must be unknown to the proponent prior to return of the jury verdict, "the evidence must have been in existence at the time of trial."  N.L.R.B. v. Jacob E. Decker and Sons, 569 F.2d 357, 364 (5th Cir. 1978); see also Smart v. City of Miami Beach, Fla., 933 F. Supp. 2d 1366, 1372 (S.D. Fla. 2013).

To grant relief based upon newly discovered evidence, a movant must meet a five-part test:

> (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003) (enunciating the five-part test in deciding a Rule 60(b)(2) motion); see also Smart, 933 F. Supp. 2d at 1372–73 (applying the five-part test in the context of a motion for new trial); Baucom v. Sisco Stevedoring, LLC, 2008 WL 2428930, at *4 (S.D. Ala. June 12, 2008) (same).

To begin with, Levada's argument that the affidavit is improper because it was not in existence at trial improperly applies the rule from Decker and Sons.  The proper analysis is not whether the affidavit was in existence before trial, but whether the facts that make up the affidavit were in existence at trial.  See Baucom, 2008 WL 2428930, at *5 (refusing to consider a doctor's affidavit in a motion for new trial when the facts it was based on came into being three months after trial).  Levada provides no reason to conclude that Questar devised the tariff access option after trial.  Even so, the tariff option's existence at trial does not help but hurts Plaintiffs.  Under Plaintiffs' own argument, Questar is a federally regulated entity with which "any company interested" could establish a tariff relationship.  (Doc. 180, p. 12).  It strains reason to simultaneously argue

17

that Plaintiffs could not access the same information before trial with a quick phone call. Moreover, Plaintiffs do not provide the cost of the tariff option. Without the cost, it cannot be said that this evidence would probably produce a different result at a new trial. Thus, Plaintiffs' argument for new trial based on the affidavit is improper and unavailing.

### ii. Remittitur Based on the Amount of Damages Awarded

As an alternative to their Motion for Judgment as a Matter of Law or Motion for New Trial, Plaintiffs argue for remittitur of the jury's award to $0.00. (Doc. 180, p. 19). In support, Plaintiffs revisit their earlier arguments that the jury's verdict is contrary to the law, unsubstantiated, and supported by only Mr. Zajac's speculative opinion. Id. at 20. Plaintiffs aver that a recent decision of this Court supports their argument for remittitur: Nationwide Mutual Ins. Co. v. Nall's Newton Tire, 2015 WL 8207478 (S.D. Ala. Dec. 7, 2015).

As an alternative to ordering a new trial, a district court may "order remittitur and reduce the damages" awarded by a jury. Nationwide, 2015 WL 8207478, at *2. Within the Eleventh Circuit, "'a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence.'" Rodrigues v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1266 (11th Cir. 2008) (quoting Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir. 1985)). Before remitting a jury's award, the Seventh

Amendment requires a plaintiff be given the option of a new trial in lieu of the court's discretionary remittitur of a jury's award. Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1329 (11th Cir. 1999). On the other hand, "where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount." Id. at 1330 (citation omitted). "The Seventh Amendment is not offended by this reduction because the issue is one of law and not fact." Id. Additionally, a reviewing court should reduce a jury award that exceeds the damages proven by the evidence at trial. "'In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence.'" Sand v. Dawasaki Motors Corp. U.S.A., 513 Fed. Appx. 847, 855 (11th Cir. 2013) (quoting Goldstein, 758 F.2d at 1448).

Based on the analysis in Section A, the Agreement did not exclude all remedies other than indemnification. Thus, the jury's award is permissible and not contrary to law. Furthermore, Plaintiffs' reliance on Nationwide is misplaced. In Nationwide, "there was no evidence that [the counter-plaintiff] was entitled to anything more under the [insurance] policy than the $318,500 it had claimed." 2015 WL 8207478, at *3 (emphasis added). Additionally, this Court instructed the jury that the counter-plaintiff "was claiming $168,500 for the building and $150,000 for the contents, for a total

damages award of $318,500.00." Id.  Thus, the Court was left to speculate "as to how the jury arrived at a damage award in the amount of $510,000.00." Id.

To say there is no evidence supporting the jury's verdict ignores the trial record.  Mr. Zajac clearly communicated to the jury the estimate Questar provided: $1,500,000.00.  Mr. Zajac's testimony had a basis and set the outer limit for the award.  So this testimony is not as Plaintiffs now characterize it: a "speculative opinion."  (Doc. 180, p. 22).  And unlike Nationwide, the jury did not return a verdict in excess of the evidence or the Court's direction.  Thus, Plaintiffs are not due remittitur of the amount of damages the jury awarded Levada.

### 4. Admission of Exhibit 8

Plaintiffs next argue that a new trial is necessary because, Exhibit 8, Levada's only evidence excusing its performance under Section 14, was improperly admitted by the Court.  (Doc. 180, p. 12).  Exhibit 8 is a spreadsheet prepared by Mr. Zajac containing the daily natural gas spot price for November 2, 2010 through February 23, 2015.  (Doc. 172-2, pp. 16–37).  Exhibit 8 also contains a column with the results of an Excel formula computing the six-month moving average price of natural gas and a column identifying whether force majeure existed, which would excuse development of the Utah property.  Id.  Plaintiffs' argument that Exhibit 8 was improperly

admitted is two-fold: improper authentication and inadmissible hearsay.
(Doc. 180, pp. 14–15).

As to their authentication argument, Plaintiffs argue that Exhibit 8
was improperly authenticated because Levada failed to proffer sufficient
testimony "from a witness with knowledge of the origin of the exhibit or its
components." (Doc. 180, p. 16). Further, Plaintiffs contend that the website
that is the source of the information contained in Exhibit 8 is unknown,
"further underscoring" the lack of authentication. Id. Levada counters that
Mr. Zajac's properly permitted testimony authenticated Exhibit 8. (Doc. 183,
p. 12).

A proffered exhibit is properly authenticated when the proponent
produces "evidence sufficient to support a finding that the item is what the
proponent claims it is." Fed. R. Evid. 901(a). Conclusive proof of authenticity
is not required. United States v. Arce, 997 F.2d 1123, 1128, reh'g denied, 5
F.3d 1493 (5th Cir. 1993). Instead, "[Rule] 901(a) requires only some
competent evidence in the record to support authentication." United States
v. Elkins, 885 F.2d 775, 785 (11th Cir. 1989) cert. denied, 494 U.S. 1005
(1990). A proponent can satisfy his prima facie burden of authentication by
offering the testimony of a witness with knowledge that a matter "is what it
is claimed to be." Fed. R. Evid. 901(b)(1). "After meeting the prima facie
burden, the evidence may be admitted, and the ultimate question of

authenticity [and credibility] is then decided by the jury." <u>United States v.</u>

<u>Lebowitz</u>, 676 F.3d 1000, 1009 (11th Cir. 2012).

Before offering Exhibit 8 into evidence, the following colloquy

transpired:

> Q (Levada's attorney): Do you have personal knowledge regarding the natural gas prices that were in effect during the time period of the contract from May 2d, 2011, through December 31, 2014?  And I say that because that's the deadline we've been talking about.
>
> A (Mr. Zajac): I do.
>
> Q: And how did you get access to the natural gas prices during that period?
>
> A: There's a governmental website from the Department of Energy call EIA.org[6] and they publish daily, monthly, yearly prices of Henry Hub prices, which Henry Hub is considered to be the benchmark for the country and anytime you hear natural gas trading was, you know, $3 or 3.96, that's what they're quoting.
>
> .   .   .
>
> Q: Well, did you create a document downloaded from the government website?
>
> A: Yeah, all the data was downloaded off the website.
>
> Q: Can you identify Exhibit 8?
>
> A: Yes.  It looks like it's a printout of a spreadsheet that was downloaded from the Department of Energy website.
>
> Q: And does it have the natural gas prices based on the Henry Hub natural gas spot price published by the Department of

---

[6] The actual website is EIA.gov, not EIA.org.  This error does not negatively implicate Exhibit 8.  If anything, it helps Exhibit 8.

Energy for each day between November 2d, 2010, through the end of the list, which is February 23rd, 2015?

A: Yes, it's [sic] got a date and for each trading day there's a settlement price.

Q: And did those prices in the first column – excuse me – the first column after the date represent the prices from the government website?

A: This is the actual – you can download a spreadsheet.

(Doc. 185-1, p. 112, l. 3–p. 114, l. 2).  Further exchange at sidebar established that the third column and fourth column from the left were Mr. Zajac's own analysis of the information downloaded using Excel.  Id. at 115, ll. 1–18.

Mr. Zajac's testimony establishes that he recognized the information contained in Exhibit 8 and was aware of its source.  If an additional witness is required to authenticate Exhibit 8, Plaintiffs offer no authority to support this proposition.  Thus, the undersigned is satisfied that Mr. Zajac's testimony satisfies Rule 901's threshold requirement that Exhibit 8 is as Levada purports: a spreadsheet displaying both 1) natural gas prices downloaded from a Department of Energy website and 2) Mr. Zajac's personal computations.

In response to Plaintiffs' hearsay argument for Exhibit 8, Levada contends that Plaintiffs did not raise this argument at trial and, therefore, waived the opportunity to do so now.  (Doc. 183, p. 13).  The Federal Rules of Evidence are clear that the failure to object to the admission of evidence constitutes a waiver of the objection.  Fed. R. Evid. 103(a)(1); see also United

States v. Maddox, 492 F.2d 104, 107 (5th Cir. 1974) ("A rule of evidence not invoked is waived."); New Market Inv. Corp. v. Fireman's Fund Ins. Co., 774 F. Supp. 909, 918 (E.D. Pa. 1991) (applying Rule 103 to an objection first raised in a new trial motion).

When Plaintiffs objected to the admission of Exhibit 8, Plaintiffs' counsel stated he had "a couple of grounds" for the objection but only articulated authentication arguments under Rule 901 and Rule 902. (Doc. 185-1, p. 115, ll. 1–6). And when Plaintiffs renewed their objection to Exhibit 8 during redirect examination of Mr. Zajac, it was again based only on Rule 901 and Rule 902. Id. at 121, ll. 10–11. With two bites at the apple, Plaintiffs failed to object to Exhibit 8 as hearsay. Moreover, Plaintiffs' authentication objection provides no quarter for their current hearsay objection. See Judd v. Rodman, 105 F.3d 1339, 1342 (11th Cir. 1997) (concluding that an objection on one basis does not preserve another unidentified basis).[7] Thus, the admission of Exhibit 8 does not warrant a new trial because it was properly admitted.

---

[7] Even if Plaintiffs had properly objected to Exhibit 8 as hearsay, the outcome would be the same. One of the exceptions to the rule against hearsay is "[m]arket quotations … generally relied on by the public or by persons in particular occupations." Fed. R. Evid. 803(17). Admissibility under Rule 803(17) hinges on trustworthiness of the information, which is based on the "general reliance by the public or by a particular segment of it, and the motivation of the compiler to foster reliance by being accurate." Fed. R. Evid. 803(17) advisory committee's note. Mr. Zajac testified that he has prior experience in oil and gas development. (Doc. 185-1, p. 96). Given his experience, he would know the source of natural gas pricing the market would rely upon: EIA.gov. In turn, EIA.gov "know(s) their work will be

### 5. Preston Nutter Transaction

As their fifth basis for a new trial, Plaintiffs aver that they were unfairly prejudiced by the Court's refusal to allow Plaintiffs' counsel to rehabilitate Mr. Breland's testimony with evidence of the Preston Nutter transaction, which dealt with Levada selling a portion of the Utah property to Mr. Nutter.  (Doc. 180, p. 17).  This is not Plaintiffs' first attempt to introduce this transaction.  <u>See</u> (Doc. 68, 103, 118, 138, 144).  The Court has unequivocally denied each of Plaintiffs' attempts.  <u>See</u> (Doc. 108, 156, 173). The Court sees no reason to change course now.

### 6. Miscarriage of Justice

As their final basis for a new trial, Plaintiffs argue that judgment on the verdict will result in a miscarriage of justice.  (Doc. 180, p. 18).  This argument, however, does not raise new grounds but merely reiterates all the claims above.  As established *supra*, ample evidence substantiated the jury's verdict and damages award.  Thus, the Court cannot say that the present outcome is against the great weight of the evidence or results in a manifest injustice.  <u>See</u> <u>Mobile Alabama Associates, LLC v. Hoeppner Const. Corp.</u>, 2011 WL 1539822, at * 3 (S.D. Ala. Apr. 22, 2011).  Moreover, there were no

---

consulted; if it is inaccurate, the public or the trade will cease consulting [its] product."  <u>Avondale Mills, Inc. v. Norfolk Southern Corp.</u>, 2008 WL 6953956, at *4 (D.S.C. Feb. 21, 2008).  Additionally, Mr. Zajac's incorporation of market price data obtained from EIA.gov into a "blended document" does not run afoul of Rule 803(17) as Plaintiffs insist.  <u>See</u> <u>Elliott Associates, L.P. v. Banco de la Nacion</u>, 194 F.R.D. 116, 121 (S.D.N.Y 2000) (allowing under Rule 803(17) a blended document that contained both Federal Reserve Board website interest rates and subsequent interest calculations).

substantial errors in the admission of evidence.  Accordingly, Plaintiffs'

Motion for New Trial or, Alternatively, Motion for Remittitur is **DENIED**.

## C. Motion for Attorneys' Fees and Expenses

### 1. Entitlement and Apportionment of Attorneys' Fees

Levada moves the Court for $697,986.13 in attorneys' fees incurred by

four different law firms through representation of Defendant in the present

matter.  (Doc. 175).  In a diversity action where Alabama is the forum state,

the court applies the law of the State of Alabama to determine whether a

party is entitled to fees and to resolve disputes as to the reasonableness of

fees.  Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1373 (M.D. Fla.

2010) (citing Trans Coastal Roofing Co., Inc. v. David Boland, Inc., 309 F.3d

759, 760 (11th Cir. 2002)).  Generally, Alabama follows the American rule for

attorney fees, "which does not require a losing party to pay the attorney fees

of the winning party …."  Classroomdirect.com, LLC v. Draphix, LLC, 992 So.

2d 692, 710 (Ala. 2008).  This rule, however, is not without exception.

"'[A]ttorney fees may be recovered if they are provided for by … contract ….'"

Id. (quoting City of Bessemer v. McClain, 957 So. 2d 1061, 1078 (Ala. 2006)).

Levada argues that the Agreement authorizes its recovery of the

attorneys' fees under Section 19(c).  (Doc. 175, p. 3).  Plaintiffs counter that

Levada's argument for recovery hinges on it being the prevailing party but

that Section 19(c) does not contemplate prevailing party recovery.  (Doc. 177,

p. 3).  Instead, Plaintiffs aver that the Agreement allows for recovery against

26

the defaulting party, and since "the record evidence is undisputed that

[Levada] is in default of its obligation under the" Agreement, it is not able to

recover attorneys' fees.  Id. at 5.

> The Agreement states in Section 19(c),

> In the event of a breach or default of the terms, provisions, or conditions of this Agreement, the defaulting Party shall pay all costs and expenses of enforcing this Agreement and the rights arising out of breach or default of its provisions, including attorneys' reasonable fees.

(Doc. 172-1, p. 16).  Given this language, the Court agrees with Plaintiffs.

Merely prevailing on a claim is insufficient to recover attorneys' fees.  A party

must default on the Agreement to be liable for attorneys' fees.  The jury's

verdict is clear that Plaintiffs, not Levada, is the defaulting party.  Thus, this

case is materially distinguishable from the case Plaintiffs now depend on

where the district court found "there was no 'Defaulting Party'": Jet Sales of

Stuart, LLC v. Jet Connection Travel, GmbH, 240 Fed. Appx. 839, 841 (11th

Cir. 2007).  Moreover, the Court has already established that the jury's

determination that Levada did not breach the Agreement accords with

Alabama contract law.  See Tiller, 5 So. 3d at 629.  Thus, the Court finds that

the Agreement allows for and Levada, the non-defaulting party, is entitled to

recover attorneys' fees from Plaintiffs, the defaulting party.

Additionally, in exercising its wide discretion, the Court finds that

apportionment of attorneys' fees based on whether Levada's attorneys were

prosecuting its counterclaim or defending Plaintiffs' claim is inappropriate for

27

two reasons.  See Council for Periodical Distributors Associations v. Evans, 827 F.2d 1483, 1488 (11th Cir. 1987)(finding it within the discretion of the district court "on when to apportion fees").  First, Section 19(c) makes no distinction between prosecuting a claim and defending a claim when it allows for the recovery of "all costs and expenses of enforcing" the Agreement from the defaulting party.  Second, Levada's counsel, Caine O'Rear, stated in his declaration, "the contract claims running in both directions between Plaintiffs and Levada arose out of the same contract, same circumstances and same facts …."  (Doc. 175-1, p. 2).  Given this, "[p]rosecution of [Levada]'s claim could not have been effectively completed without likewise defending" Plaintiffs' claim.  Pediatric by the Bay v. EMD Solutions, Inc., 81 So. 3d 381, 385 (Ala. Civ. App. 2011).  To make no distinction is "consistent with both efficiency and fairness."  Evans, 827 F. 2d at 1488.  To require otherwise would result in the disfavored "second major litigation."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  Thus, the Court concludes that apportionment of attorneys' fees in this case is imprudent.

### 2. Reasonableness of Fees

It is well-settled that "[t]he determination of whether [ ] attorney[s'] fee[s] [are] reasonable is within the sound discretion of the trial court …." Kiker v. Probate Court of Mobile County, 67 So. 3d 865, 867 (Ala. 2010) (internal quotations and citation omitted).  In assessing the reasonableness of an attorneys' fees request, courts generally apply the "lodestar" method to

obtain an objective estimate of the value of an attorney's services.  Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar figure is calculated by multiplying the hours that each attorney reasonably worked by a reasonable rate of pay, defined as the prevailing market rate in the "legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895–96 n. 11 (1984).  In this case, the relevant legal community is Mobile, Alabama.  See American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed") (citations omitted).  The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Barnes, 168 F.3d at 427

When seeking attorneys' fees, the movant must not request fees for hours that are "excessive, redundant, or otherwise unnecessary;" or request fees for unsuccessful claims.  Hensley, 461 U.S. at 434–35.  When a request for attorneys' fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."  Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Likewise, where the rates or hours claimed seem excessive or lack the

appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations.  See, e.g., Norman, 836 F.2d at 1299.  Notably, "[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment either with or without the aid of witnesses."  Id. at 1303 (citations omitted).

Further, the lodestar figure established by the reviewing court may be adjusted by consideration of various factors including:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So. 2d 740, 749 (Ala.1988).  See also e.g. Pharmacia Corp. v. McGowan, 915 So. 2d 549, 552–54 (Ala. 2004); Lolley v. Citizens Bank, 494 So. 2d 19 (Ala. 1986).  These criteria are for purposes of evaluating whether the attorneys' fees are reasonable but they are not an exhaustive list of specific criteria that must all be met.  Beal Bank, SSB v. Schilleci, 896 So. 2d 395, 403 (Ala. 2004).

In support of its motion for attorneys' fees, Levada provided the declaration of Caine O'Rear, Chris Healy, and Bruce Rogers.  See (Doc. 175-

1, 175-2, 176-1).  First, Mr. O'Rear's declaration lays out that Levada seeks $377,832.13 in legal fees for the 1,134.6 hours expended by attorney Caine O'Rear (forty-one years' experience) attorney Christine Hart (almost five years' experience and a Third Circuit clerkship), paralegal Cindy McCarthy (twenty-three years' experience), and other unnamed attorneys at Hand Arendall LLC.  (Doc. 175-1, p. 3).  Second, Mr. Healy's declaration explains that Levada seeks $275,376.00 in legal fees for the 676.1 hours expended by attorneys Chris Healy (26 years' experience), Jessica Shook (nine years' experience), Daniel Levey (unknown experience), Jennifer Schramm (unknown experience), and other unnamed "lawyers and para-professionals" at Reed Smith LLP in New York City, New York.  (Doc. 175-2, p. 3).  Third, Levada seeks $23,537.50 in legal fees for the 59.9 hours expended by unnamed attorneys with Holland & Hart LLP in Salt Lake City, Utah.  (Doc. 175-1, p. 4).  Fourth, Levada seeks $19,250.00 in legal fees for the 70 hours expended by Alex Gray of Silver, Voit & Thompson during the inception of the present matter.  Id. at 5.

With regard to the hourly rates charged, Bruce Rogers, a partner at Bainbridge, Mims, Rogers & Smith, LLP, concluded, "my professional opinion is that hourly rates charged by and requested by Levada EF Five, LLC's counsel in this matter are fair and reasonable in the Southern District of Alabama."  (Doc. 176-1, p. 4).  He based this conclusion on his thirty-six years as an Alabama attorney with experience practicing in complex litigation

within the state and local area, familiarity with Mr. O'Rear's reputation, the subject matter of the case, and outcome of the case. Plaintiffs do not contest the amount of hours spent on this case.[8] Instead, Plaintiffs argue that the hourly rate submitted by Levada "exceed[s] the normal rate for attorneys of comparable skill in the Mobile area." (Doc. 177, p. 12).

Upon consideration of all declarations submitted, the factors outlined above, and the Court's expertise, the undersigned finds the following rates reasonable. The experience and expertise of Caine O'Rear and Chris Healy justify the hourly rate of $400 per hour proffered by Mr. O'Rear.[9] See Gulf Coast Asphalt Co., LLC v. Chevron U.S.A., Inc., 2011 WL 612737, at * 3 (S.D. Ala. Feb. 11, 2011) (finding $325 per hour a reasonable rate for an attorney with 32 years of experience as a lawyer in a complex environmental law

---

[8] Even so, the Court finds the hours expended reasonable given Levada's degree of success, the nature and complexity of this case, and geographical location of both the subject matter of the suit (Utah) and parties (Alabama and New York). See Natures Way Marine, LLC v. Everclear of Ohio, Ltd., 2015 WL 1757116, at *4 (S.D. Ala. Apr. 17, 2015) (concluding that a party that achieved an "excellent result" should be compensated "for all hours reasonably expended") (citing Popham v. City of Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987)).

[9] Mr. O'Rear also moves for a premium rate for the hours he spent on this case in 2016. To provide some context, Caine O'Rear and Christine Hart withdrew as counsel for Levada from September 10, 2015 until January 29, 2016 when they re-entered prior to trial. Due to his late re-entry, Mr. O'Rear proposes a rate of $480 per hour for work completed in 2016. (Doc. 175-4). The Court finds this premium unnecessary and, therefore, unreasonable. The events that transpired in his absence (or the lack thereof) do not justify the added cost of representation. Additionally, Mr. Healey, a non-local attorney, requested an across the board rate of $480 per hour. (Doc. 175-2, p. 3). However, Mr. Healy, an out-of-town attorney, has not shown that he is due a rate different than Mr. O'Rear, a local attorney. See Barnes, 168 F.3d at 437.

case).  In the same vein, the Court is satisfied that, based on its own experience and the rate above, the hourly rate proposed by Silver, Voit & Thompson, $275 per hour, is a reasonable hourly rate for the work performed by Alex Gray.  Also Christine Hart and Jessica Shook's experience as an associate makes $200 per hour a reasonable hourly rate for these two attorneys.[10]  See Vanderbilt Mortgage and Finance, Inc. v. Crosby, 2015 WL 5178719, at *2 (S.D. Ala. Sept. 4, 2015)(finding $185 per hour a reasonable rate for an attorney with 3 to 4 years of experience).  And the court finds the rate of $140 per hour proffered for Cindy McCarty, a seasoned paralegal, is reasonable and in line with the previous findings of this Court.  See Vision Bank, 2012 WL 222951, at *3 (finding $110 per hour a reasonable rate for paralegals with indeterminate experience); Gulf Coast Asphalt Co., 2011 WL 612737, at *4 (finding $120 per hour a reasonable rate for paralegals).  But given that the experience for associate Daniel Levy and associate Jennifer Schramm is not provided, the Court finds that the reasonable rate for their work is $150 per hour.  See Vision Bank v. FP Management, LLC, 2012 WL 222951, at *3 (S.D. Ala. Jan. 25, 2012)(finding  $150 per hour a reasonable rate for an associate attorney with an indeterminate amount of experience).

In contrast to the reasonable rates above, there are 9 hours of work proposed by Mr. O'Rear that were performed by "other lawyers" with Hand

[10] A premium rate is also proposed for the work Christine Hart performed in 2016.  The Court declines to find this rate reasonable based on footnote 9. Further, the premium rate proposed for Jessica Shook is unreasonable for the same reason Mr. Healy is not due a premium over the local rate.

Arendall and 59.9 hours of work performed by "various lawyers" with Holland & Hart LLP.  (Doc. 175-1, pp. 3–4).  The rate charged by the Hand Arendall attorneys is not provided and the rate charged by the Holland & Hart attorneys ranges "from $260 to $465 per hour" in this matter.  (Doc. 175-1, pp. 3–4).  Either request, however, fails to proffer the attorneys' names or the experience they possess.  Without at least identifying who the attorneys are or how many attorneys performed the work, much less the levels of experience, it cannot be said that any rate is reasonable.  To assign a rate would require the Court to speculate, which it is not willing to do.[11]

In sum, the Court, utilizing its own expertise in this market as well as a review of prior awards and the facts and factors above, deems the following lodestar calculations to be reasonable and appropriate in this matter:

| | Reasonable Rate | Reasonable Hours | Fee |
|---|---|---|---|
| **Hand Arendall LLC** | | | |
| Caine O'Rear | $400.00 | 649.9 | $259,960.00 |
| Christine Hart | $200.00 | 329.3 | $65,860.00 |
| Cindy McCarthy | $140.00 | 146.4 | $20,496.00 |
| **Reed Smith LLP** | | | |
| Chris Healy | $400.00 | 471.3 | $188,520.00 |
| Jessica Shook | $200.00 | 132.5 | $26,500.00 |
| Daniel Levey & Jennifer Schramm | $150.00 | 72.3 | $10,845.00 |

**Silver, Voit &**

---

[11] As noted above, Mr. Healy declared that "other lawyers and para-professionals at Reed Smith [ ] spent increments of time on this file and [ ] [make] up the balance of the fees charged at their standard hourly rates …." (Doc. 175-2, p. 3).  Mr. Healy does not offer the names and experience of these individuals, but based on the declaration and Court's own calculations, it does not appear that the "other lawyers and para-professionals" work is a component of the fee requested by Reed Smith LLP.

**Thompson**

| | | | |
|---|---|---|---|
| Alex Gray | $275.00 | 70 | $19,250.00 |
| **Total Fees** | | | **$588,431.00** |

### 3. Expenses

Levada also moves for an award of $27,189.91 in expenses incurred

throughout litigation in the following respects: Hand Arendall LLC

$8,638.43; Reed Smith LLP $17,085.99; and Veritext Legal Solutions

$1,465.49.  See (Docs. 175, p. 4; 175-1, pp. 3, 5; 175-2, p. 3).  Plaintiffs do not

object to these expenses.  Further, the Court has already determined that

Levada is due "all costs and expenses" from Plaintiffs, the defaulting party.

But this determination does not allow the Court to be generous with

Plaintiffs' money.  Barnes, 168 F.3d at 428.  Instead, Levada bears "the

burden of submitting a request that will enable [the Court] to determine

what expenses were incurred and whether [Levada] [is] entitled to them."

Dzwonkowski v. Dzwonkowski, 2008 WL 2163916, at *19 (S.D. Ala. May 16,

2008) (citing Barnes, 168 F.3d at 438–39).  The declarations of Messrs.

O'Rear and Healy fail to satisfy this burden by merely lumping fees together

with no explanation, but each attorney did state that the expense statements

"are available for inspection and/or production upon request of the Court, if

necessary, subject to appropriate protection and redaction for privileged and

confidential information in the descriptions of the work performed."  (Docs.

175-1, p. 3; 175-2, p. 3).

In keeping with the Eleventh Circuit's tradition of reimbursing necessary and reasonable expenses, the Court concludes that it would be premature to render a decision regarding Levada's expenses without more information.  Thus, Levada is to file and serve expense exhibits with only such redactions as are truly necessary to conceal privileged and confidential information.  Plaintiffs are directed to file any response no later than May 4, 2016, at which time the Court will take Levada's motion for expenses under consideration.  Given this, the Court **WITHHOLDS** its decision regarding Levada's request for expenses.

### 4. Prejudgment Interest

Lastly, Levada argues it is due prejudgment interest on the jury's award of damages.  (Doc. 175, p. 1).  Plaintiffs do not object to this request and with good reason.  Before submitting this case to the jury, the parties stipulated that the Court would determine when prejudgment interest began accruing and calculate the interest due by applying Alabama's prejudgment interest rate of 6% per annum.  (Doc. 185-2, p. 20).  Based on the following, the Court **GRANTS** Levada's request for prejudgment interest.

Alabama law instructs that "the legal rate of prejudgment interest is 6 percent per annum." Bank of America, N.A. v. Newton, 2012 WL 5392265, at *3 (M.D. Ala. Nov. 5, 2012) (applying the statutory prejudgment interest rate outlined in the Code of Alabama § 8-8-1 (1975)) (citation omitted).  And all interest accrues from the time the party becomes liable and bound to pay

them.  Ala. Code § 8-8-8 (1975); see also Maddox v. Alfa Mut. Ins. Co., 577 So. 2d 457, 458 (Ala. 1991).

Applying Alabama's 6 percent per annum prejudgment interest rate to this matter, the Court finds that the per diem interest rate taxed against the jury's award of $1,420,671.02 is 0.00016438356164, which equates to $233.53 per day ($1,420,671.02 times 0.00016438356164).[12]  As to when this per diem amount began accruing, Section 14 of the Agreement directs Plaintiffs to transfer the Questar Facility Agreements "[w]ithin 120 days of [the] Closing Date."  (Doc. 172-1, p. 13).  The Closing Date was "June 10, 2011."  (Doc. 175, p. 2).  Thus, 120 days from this date is October 8, 2011.  From October 8, 2011 through this date, April 28, 2016, 1,664 days have elapsed.  Based on this, $388,593.92 ($233.53 per day times 1,664 days) in interest has accrued on the jury's award of damages for Levada.

### 5. Total Damages Award

In sum, Levada is due judgment in its favor based on the jury's determination that Plaintiffs breached the Agreement by failing to transfer the Questar Facility Agreements.  Thus, damages on the jury's verdict are due in the following categories and amounts:

(i)      **$1,420,671.02** in damages for Levada based on Plaintiffs' failure to deliver the Questar Facility Agreements, as determined by the jury;

[12] The Court used a 365 day calendar in its calculations.

(ii)     prejudgment interest totaling **$388,593.92** for the period of October 8, 2011 through the date of entry of this Order and Judgment, calculated at the statutory interest rate of 6% ($233.53 per diem) for 1,664 days; and

(iii)    reasonable attorneys' fees in the amount of **$588,431.00**;

bringing the total amount of damages due to **$2,397,695.94**.

## CONCLUSION

For all the foregoing reasons, it is **ORDERED** as follows:

1.  Plaintiffs' Renewed Motion for Judgment as a Matter of Law on Plaintiffs' Claims for Breach of Contract (Doc. 178) is **DENIED**;

2.  Plaintiffs' Renewed Motion for Judgment as a Matter of Law on Levada's Counterclaim for Breach of Contract (Doc. 179) is **DENIED**;

3.  Plaintiffs' Motion for New Trial or, Alternatively, Motion for Remittitur (Doc. 180) is **DENIED**;

4.  Levada's Motion to Enter Final Judgment with Interest, Attorneys' Fees and Litigation Expenses (Doc. 175) is **GRANTED, in part, WITHHELD, in part,** and **DENIED**, **in part**; and

5.  A separate judgment will be entered in Levada's favor against Plaintiffs, jointly and severally, in the total amount of **$2,397,695.94**.

6.  An amended judgment will be entered by separate order in

Levada's favor against Plaintiffs, jointly and severally, once the

amount of reasonable expenses is determined.

**DONE** and **ORDERED** this 28th day of April, 2016.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE